IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **NAUTILUS INSURANCE COMPANY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:21-cv-47 (MTT) |
| ) | |
| **BACONSFIELD APARTMENTS, INC.,** ) | |
| ) | |
| Defendant. ) | |

## ORDER

In this action for recission of an insurance policy, Plaintiff Nautilus Insurance Company ("Nautilus") moves for summary judgment. Doc. 44. For the reasons that follow, Nautilus' motion for summary judgment (Doc. 44) is **GRANTED in part and DENIED in part**. It is undisputed that the insured misrepresented material information and that Nautilus relied on this information when it issued the policy. But issues of fact remain regarding whether Nautilus waived its right to rescind and whether Nautilus acted in bad faith.

### I. BACKGROUND[1]

In December 2019, Baconsfield Apartments, Inc. ("Baconsfield") bought a complex of vacant buildings. Docs. 47-1 ¶¶ 1, 7; 58-1 at 3, 5 ¶¶ 1, 7. Kunj and Ashok Patel, Baconsfield's principals, planned to completely renovate the buildings and

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

convert them into apartments.  Docs. 47-1 ¶¶ 1, 4; 58-1 at 3-4 ¶¶ 1, 4.  By all accounts, the buildings were "in disrepair" when Baconsfield bought them.  Docs. 47-1 ¶ 10; 58-1 at 6-7 ¶ 10.  On May 13, 2020, Baconsfield's insurance agent, Dale Melton, submitted an insurance application on Baconsfield's behalf to Nautilus.  Docs. 47-1 ¶ 17; 58-1 at 10 ¶ 17.

While completing the application, Melton answered "no" to Question 9, which asked: "Is the building currently damaged by fire or otherwise?"  Docs. 47-1 ¶ 18; 47-2 at 101; 58-1 at 10 ¶ 18.  Melton allegedly based his answer on his assessment of photographs of the buildings, which depicted no apparent fire damage.  Doc. 44-7 at 42:4-13, 103:8-10.  Regardless of why Melton answered no, his answer was incorrect because the buildings had sustained prior fire damage.  Docs. 44-2 at 100:22-101:4; 47-1 ¶¶ 20-21; 58-1 at 11 ¶¶ 20-21; Doc. 58-7 at 2-3.

Nautilus forwarded Baconsfield's application to TAPCO, its managing general agent for certain lines of insurance.  Docs. 47-1 ¶ 23; 58-1 at 12 ¶ 23.  Based on TAPCO's recommendation, Nautilus later issued a policy to Baconsfield for the period of May 21, 2020 to May 21, 2021.  Doc. 1-1.

On July 8, 2020, Baconsfield made a "total loss" claim because of a fire in one of the buildings.  Docs. 44-2 at 300.  Nautilus retained Vericlaim, d/b/a Sedgwick, to investigate the claim.  Doc. 58-2 at 15:14-22.  On July 15, 2020, Sedgwick reported to Nautilus that there had been four previous fires at the property.  Doc. 58-7 at 2-3.  On August 3, 2020, Nautilus issued a "Notice of Cancellation or Refusal to Renew" to Baconsfield.  Doc. 73-1.  The cancellation notice states that *coverage would remain in place until September 18, 2020, after which it would be cancelled*.  *Id*.

On August 27, 2020, Nautilus, even though it knew about the prior fires, emailed the Patels requesting extensive documentation and launched a wide ranging investigation.  Doc. 44-2 at 203-09.  As part of that investigation, Nautilus conducted an examination under oath of Ashok and Kunj Patel on September 16, 2020.  *Id*. at 1-202.  During the examination, Ashok Patel admitted that he had heard of a small fire on the property in the news before buying the buildings.  *Id*. at 100:24-101:4.

On February 5, 2021—almost seven months after the Sedgwick report—Nautilus filed the present action, seeking recission of the policy.  Doc. 1.  Nautilus asserts that it would not have issued the policy if it knew that Question 9 in the application was answered incorrectly.  Doc. 1 ¶¶ 18-19.  Baconsfield counterclaimed, seeking a declaratory judgment that the policy is valid, and alleging claims for breach of contract and bad faith under O.C.G.A. § 33-4-6.  Doc. 26.

## II. STANDARD OF REVIEW

**A. Summary Judgment Standard**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial.'  In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (emphasis and alterations

in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)) (other citation omitted).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In determining whether a genuine dispute of material fact exists, the Court "must avoid weighing conflicting evidence or making credibility determinations."  *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).  Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255 (citation omitted).  A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  Furthermore, "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate."  M.D. Ga. L.R. 56.

**B. Declaratory Judgment Standard**

"In a case of actual controversy … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "[A] declaratory judgment may only be issued … [if], under the facts alleged, there [is] a substantial continuing controversy between parties having adverse legal interests."  *Walden v. Ctrs. for Disease Control & Prevention*, 669

Case 5:21-cv-00047-MTT   Document 74   Filed 10/20/22   Page 5 of 14

F.3d 1277, 1284 (11th Cir. 2012) (quotation marks and citation omitted).  "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking … declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  *Id.* (quotation marks and citation omitted).  "Injury in the past … does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."  *Id.* (quotation marks and citation omitted).

### III. DISCUSSION

In its motion for summary judgment, Nautilus argues it is entitled to (1) rescission based on Baconsfield's admittedly false response to Question 9, and (2) summary judgment on Baconsfield's counterclaim for bad faith.  Doc. 44-1.  Georgia law[2] provides that an insurer may rescind a policy if there was a material misrepresentation in the application; however, if after learning of the misrepresentation an insurer acts inconsistent with the decision to rescind the policy, the insurer has waived the ability to assert the defense of recission.  *Fla. Int'l Indem. Co. v. Osgood*, 233 Ga. App. 111, 112-13 503 S.E.2d 371, 373 (1998).  The parties agree that there were misrepresentations in Baconsfield's application, but Baconsfield argues that the misrepresentations were not material and that, in any event, Nautilus waived its right to rescind the policy.  *See generally* Docs. 44-1; 49; 64.

**A. Material Misrepresentation**

O.C.G.A. § 33-24-7(b) provides that "[m]isrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the

---

[2] Because the Court has diversity jurisdiction, Georgia substantive standards of law must apply.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

-5-

policy … unless … [m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer." Materiality is usually a jury question, but "where the evidence excludes every reasonable inference except that [the misrepresentation] was material, [the issue becomes] a question of law for the Court." *Pope v. Mercury Indem. Co. of Georgia*, 297 Ga. App. 535, 538, 677 S.E.2d 693, 697 (2009) (citation omitted) (alterations in original). "Where the evidence shows that the insurer would not have issued the policy if it had been aware of [the true facts], the evidence demands a finding that the omissions or misrepresentations were material to the acceptance of the risk." *Id.* (quotation marks and citation omitted) (alterations in original).

"Georgia courts have found that when an insurer presents an uncontradicted statement by its underwriter that the insurer would not have issued an insurance policy had it known the truth about a misrepresentation, the burden shifts to the potential insured's representative to show that the misrepresentation was not material." *Glushchak v. Transamerica Life Ins. Co.*, 2022 WL 1670777, at *16 (N.D. Ga. Mar. 31, 2022); *Sanders v. S. Farm Bureau Life Ins. Co.*, 174 Ga. App. 888, 889, 332 S.E.2d 33, 34 (1985) ("The evidence as to the materiality of the risk being uncontradicted, the insurer was entitled to summary judgment."); *Davis v. John Hancock Mut. Life Ins. Co.*, 202 Ga. App. 3, 5, 413 S.E.2d 224, 226 (1991); *Nappier v. Allstate Ins. Co.*, 961 F.2d 168, 170 (11th Cir. 1992). A plaintiff can rebut the underwriter's testimony by demonstrating that the testimony is not supported by the underwriting policies, the insurer did not rely on the insured's application when deciding to issue the policy, or presenting expert testimony that a prudent insurer would have issued the policy despite the misrepresentation. *Glushchak*, 2022 WL 1670777, at *16; *Lively v. S. Heritage Ins.*

*Co.*, 256 Ga. App. 195, 196, 568 S.E.2d 98, 100 (2002); *Case v. RGA Ins. Servs.*, 239 Ga. App. 1, 3, 521 S.E.2d 32, 34 (1999); *Jackson Nat. Life Ins. Co. v. Snead*, 231 Ga. App. 406, 410, 499 S.E.2d 173, 176 (1998).

Again, the parties do not dispute that Question 9, which identified whether there was existing damage to the property, was answered incorrectly. Doc. 58-1 at 11 ¶¶ 20-21. The question then is whether the misrepresentation was material to the risk.[3] Nautilus offers the testimony of two underwriters to support its contention that if Question 9 had been answered correctly, it would not have issued the policy to Baconsfield. Doc. 44-1 at 8, 12. Lizbeth Kennedy, a TAPCO underwriter, testified that answering "yes" to Question 9 "would have been a red flag" because she was "not aware of insurers who will cover properties with existing fire damage." Doc. 44-9 ¶ 5. And Nautilus underwriting manager Nick Graham testified that Nautilus would not write a policy for a property with existing damage. Doc. 47-3 at 56:6 ("If it's damaged, we wouldn't write it.").

Baconsfield has failed to rebut this testimony. First, Nautilus' underwriting policies support the testimony of Kennedy and Graham. Nautilus' Surplus Lines eGuide specifically lists "[e]xisting damage that has not been repaired regardless of the cause of loss (e.g., roof damage, fire damage, flood or water damage, wind damage, etc.)" as a condition prohibiting the issuance of a policy. Doc. 47-4 at 35. This prohibition is

---

[3] Baconsfield argues that recission is inappropriate because the insurance application, specifically the phrase "by fire or otherwise," was ambiguous. Doc. 58 at 14. As a result, Baconsfield contends that its response to Question 9 "cannot be false as a matter of law." *Id*. at 14. The question is not at all ambiguous, as Ashok Patel's testimony makes clear. Doc. 44-2 at 100:15-101:4. When shown the question and answer he acknowledged that Question 9 was answered incorrectly. *Id*.

reiterated under a summary section of the guidelines for property coverage that prohibits underwriting "[b]uildings with existing damage." *Id*. at 33.

Second, Nautilus relied on Baconsfield's application, including the answer to Question 9, when it issued the policy. Kennedy testified, without contradiction, that she "reviewed [Baconsfield's] application for insurance coverage" and "input the pertinent information into a proprietary TAPCO program" to generate quotes from different insurers with whom TAPCO has contracts with. Doc. 44-9 ¶¶ 3-4. Nautilus came up as a match and Kennedy "submitted the application along with a rating sheet to Nautilus to approve a quote." *Id*. ¶ 4. Then, "[u]pon approval by Nautilus, TAPCO provided a quote for insurance coverage to Mr. Melton on behalf of Nautilus based on the information provided in the Baconsfield's application." *Id*. Clearly, TAPCO, and thus Nautilus, relied on the information in the application.

Baconsfield argues that Nautilus did not rely on the application because Baconsfield disclosed that the sprinkler system was inoperable, which was "existing damage." Doc. 58 at 16-19. Thus, Baconsfield's argument goes, if in fact Nautilus had relied on the application, the disclosure of the inoperable sprinkler system would have precluded Nautilus from underwriting the policy. *Id*. This argument is mere misdirection. Question 5 on the application asked whether the building was "fully protected by an operational sprinkler system covering 100% of the premises[.]" Doc. 47-2 at 101. Baconsfield answered "no." *Id*. But Nautilus' decision to issue the policy despite Baconsfield's answer to Question 5 does not mean that Nautilus ignored its underwriting criteria. While an inoperable sprinkler system may or may not constitute "damage," it does not present the same kind of underwriting risk as prior fire damage—a

distinction both logical and, more importantly, spelled out in the underwriting guidelines. "[F]ire damage" is listed as "existing damage" in the underwriting guidelines that prohibits an underwriter from issuing the policy. Doc. 47-4 at 35. By contrast, a non-operational sprinkler system is not listed among the underwriting prohibitions; rather, the presence of a sprinkler system is merely a trigger for underwriters to attach a "Protective Safeguards Endorsement CP0411 to warrant the maintenance of the protective safeguards." *Id*. at 33. Thus, Nautilus' assertion that it would not have issued the policy if it had known about the prior fire damage is not at all in conflict with its decision to issue the policy even though the building did not have an operational sprinkler system.[4]

Third, Baconsfield offers no opinion evidence that a prudent insurer would have issued the policy even if it had known of the misrepresentation. On the contrary, Baconsfield's expert, Marc Ragin, agrees that evidence of past damage would be a relevant factor to consider when assessing a risk. Doc. 47-2 at 36:8-37:20.

In sum, Nautilus has presented undisputed evidence that Baconsfield's misrepresentation changed the nature, extent, and character of its risk. Accordingly, the evidence has "exclude[d] every reasonable inference except that [the misrepresentation] is material." *Lee v. Mercury Ins. Co. of Ga.*, 343 Ga. App. 729, 742, 808 S.E.2d 116, 129 (2017) (quotation marks and citation omitted).

---

[4] Baconsfield also argues that Nautilus' failure to conduct an inspection of the property violated the underwriting guidelines and creates a factual dispute as to whether Nautilus took "a calculated risk which prevents it from rescinding the policy." Doc. 58 at 13-14. But Nautilus' decision not to conduct an inspection was consistent with its underwriting guidelines. *See* Docs. 38-4 at 191; 1-1 at 8 ("[Nautilus has] the right to [m]ake inspections and surveys at any time … [Nautilus is] not obligated to make any inspections[.]"). And Baconsfield's expert agrees that the failure to conduct an inspection would not prevent Nautilus from rescinding the policy. Doc. 47-2 at 69:25-70:3.

**B. Waiver**

Baconsfield argues that Nautilus waived its right to rescind the policy because it acted inconsistent with the intent to void the policy. Doc. 58 at 8-10. When an insurance company takes actions that are inconsistent with the defense of recission, after learning of grounds that would justify recission, the insurance company has waived the right to void the policy. *Grange Mut. Cas. Co. v. Bennett*, 350 Ga. App. 608, 612, 829 S.E.2d 834, 837 (2019); *Osgood*, 233 Ga. App. at 114-15, 503 S.E.2d at 374-75; *State Farm Fire & Cas. Co. v. Jenkins*, 167 Ga. App. 4, 6, 305 S.E.2d 801, 803 (1983). For example, in *Osgood* the insurer sent a notice informing the insured that "in accordance with the terms and conditions of the ... policy that the ... policy will expire effective at and from the hour and date mentioned above [August 26, 1993, at 12:01 a.m.] and the policy will NOT be renewed." 233 Ga. App. at 114, 503 S.E.2d at 374 (alterations in original). The court held that this notice was inconsistent with recission because the language in the notice focused "on the status of the policy" and assured the insured that the policy was "alive and well and [would] continue through the designated expiration date." *Id*. at 114-15, 503 S.E.2d at 374-75; *see also Bennett*, 350 Ga. App. at 612, 829 S.E.2d at 837 ("Here, the Insurer waived a void policy defense when, upon discovery of the inaccurate information on the application, it informed the Employer that its coverage would continue for 90 days. If the Insurer believed that the policy was void based on fraud, it should have immediately rescinded it.").

Nautilus knew about the prior fires as early as July 15, 2020. Doc. 58-7. Sedgwick's report revealed that the fire department responded to four prior fires in the building. *Id*. at 2-3. And Nautilus sought to rescind the policy because Baconsfield

"purchased the property knowing there was unrepaired fire damage" but did not reveal this information on its application. Doc. 47 at 11. A jury could find that Nautilus knew or had reason to know the property had existing fire damage and thus knew Baconsfield misrepresented material information when it completed the application. But rather than moving to rescind, Nautilus sent Baconsfield a "Notice of Cancellation or Refusal to Renew" on August 3, 2020. Doc. 73-1. The notice states, "[y]ou are hereby notified, in accordance with the terms and conditions of the above mentioned numbered policy and in accordance with the law, that your insurance will cease at and from [September 18, 2020]." *Id*. at 2. Nautilus' notice is materially indistinguishable from the notice the insurer sent in *Osgood*. 233 Ga. App. at 114, 503 S.E.2d at 374. When Nautilus informed Baconsfield the policy would remain in force until September 18, 2020 it acted inconsistent with the position it now takes—the policy should be completely rescinded. In short, there is evidence tending to prove that Nautilus was aware of grounds supporting recission, but yet took action inconsistent with recission. Based on this evidence, a jury could find that Nautilus has waived any right to void the policy. *See Am. Safety Indem. Co. v. Sto Corp.*, 342 Ga. App. 263, 272, 802 S.E.2d 448, 456 (2017) ("Here, upon learning of the 'extent or significance' of the alleged misrepresentations, ASIC did not at once announce its intent to rescind the policies, but rather chose to issue a denial of coverage.").

Nautilus' argument that there is no evidence it was aware of the facts giving rise to recission is groundless. Doc. 72 at 8-10. Internal email correspondence on August 3, 2020—the same day the notice was mailed—illustrates that Nautilus understood the importance of the Sedgwick report. Doc. 58-8. Specifically, Carrie Gerbert, a senior

underwriter at Nautilus sent an email asking that the Baconsfield policy "be cancelled ASAP" because the "investigation" brought to light that the insured "had 3 prior fire losses." *Id*.  Nautilus contends that the misrepresentation at issue is not the prior fires but the inaccurate response to Question 9.  Doc. 72 at 10.  But the two are the same.  As Nautilus stated in its main brief, its case for recission is based on "unrepaired fire damage."  Doc. 47 at 11.  Nautilus knew about the four fires in the vacant buildings and a jury could conclude that Nautilus knew the buildings had fire damage when it sent the cancellation notice.

In sum, there is evidence Nautilus knew that Baconsfield's application contained material misrepresentations as early as July 15, 2020.  But rather than announce its intent to rescind, Nautilus "gave every indication to the insured that the policy remained in full force and effect."  *Osgood*, 233 Ga. App. at 114-15, 503 S.E.2d at 374 (quotation marks and alterations omitted).  Thus, while Baconsfield misrepresented material facts, a jury could find that Nautilus waived its right to rescind the policy.

**C. Bad Faith**

Finally, Baconsfield argues a jury could find Nautilus acted in bad faith when it refused to pay Baconsfield's insurance claim.  Doc. 58 at 19-20.  **"**Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact."  *Lee*, 343 Ga. App. at 748, 808 S.E.2d at 133 (citation omitted).  "Rather, bad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment."  *Old Republic Nat'l Title Ins. Co. v. RM Kids, LLC*, 337 Ga. App. 638, 650,

788 S.E.2d 542, 553 (2016) (cleaned up).  "Ordinarily, the question of bad faith is one for the jury."  *Am. Safety Indem. Co.*, 342 Ga. App. at 273, 802 S.E.2d at 457.  "However, when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties."  *Id*. (citations and punctuation omitted).

As discussed, Nautilus had reasonable grounds to deny Baconsfield's claim—Baconsfield misrepresented material facts.  But when the insurer has waived its coverage defenses and its right to rescind the policy, the insurer no longer has any basis for denying the insured's claim.  *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 291, 779 S.E.2d 55, 62 (2015).  Because there is evidence that Nautilus waived its right to rescind the policy, it "cannot be said *as a matter of law* that [Nautilus] had a reasonable defense or probable cause to deny [Baconsfield's] claim in this regard."  *Id*. (emphasis in original); *see also Am. Safety Indem. Co.*, 342 Ga. App. at 275, 802 S.E.2d at 458 (Barnes, J., concurring in part and dissenting in part).

True, in *Osgood*, the court declined to hold that the insurer's waiver of its legal defense was evidence of bad faith because the issue of whether there was waiver was "a close question."  233 Ga. App. at 116, 503 S.E.2d at 375.  But *Osgood* squarely answered that question—waiver on the facts here, if the jury accepts them, is no longer a "close question."  *Id*. at 114, 503 S.E.2d at 374.  In short, once Nautilus sent Baconsfield the notice, a jury could find Nautilus did not have reasonable grounds to deny Baconsfield's claim.  Further, a jury could find that Nautilus' exhaustive, all fronts, over six-month investigation after it allegedly waived its right to rescind is further evidence of bad faith.  Thus, a jury question exists as to whether the notice, which

treated the policy as effective, is evidence that Nautilus conducted itself in bad faith by failing to notify Baconsfield it believed the Policy was void.

## IV. CONCLUSION

For the foregoing reasons, Nautilus' motion for summary judgment (Doc. 44) is **GRANTED in part and DENIED in part**. It is undisputed that the insured misrepresented material information and that Nautilus relied on this information when it issued the policy. But issues of fact remain regarding whether Nautilus waived its right to rescind and whether Nautilus acted in bad faith. Because this Order moots the parties' *Daubert* motions, those motions (Docs. 36; 39) are **DENIED**.

**SO ORDERED**, this 20th day of October, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT